SEP 26 2018

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DENISE CECILE KELSEY,

              Plaintiff,              **DECISION AND ORDER**

     v.

                                    1:17-CV-00356 EAW

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.

_____

## INTRODUCTION

Represented by counsel, Plaintiff Denise Cecile Kelsey ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Acting Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 7; Dkt. 12). For the reasons discussed below, the Commissioner's motion (Dkt. 12) is granted and Plaintiff's motion (Dkt. 7) is denied.

## BACKGROUND

Plaintiff protectively filed her application for DIB on December 8, 2009. (Dkt. 6 at 255-56).[1] In her application, Plaintiff alleged disability beginning March 7, 2003, due to

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

- 1 -

sleep apnea, depression, obesity, high blood pressure, osteoarthritis of the spine, knee injury, and right foot condition. (*Id.* at 302, 307). Plaintiff's application was initially denied on February 28, 2014. (*Id.* at 146-149).[2] At Plaintiff's request, a hearing was held before an administrative law judge ("ALJ") on July 24, 2013. (*Id.* at 80-115). On July 30, 2013, the ALJ issued an unfavorable decision. (*Id.* at 117-134).

Plaintiff requested review by the Appeals Council and, on October 17, 2014, the Appeals Council entered an order vacating the hearing decision and remanding the matter to the ALJ. (*Id.* at 135-38). In its order, the Appeals Council instructed the ALJ to do the following on remand: (1) obtain evidence from a medical expert to clarify the nature and severity of Plaintiff's impairments through December 31, 2006, the date Plaintiff was last insured for DIB purposes;[3] (2) further evaluate Plaintiff's mental impairments in accordance with the special technique described in 20 C.F.R. § 404.1520a; (3) give further consideration to Plaintiff's maximum residual functional capacity; and (4) obtain supplemental evidence from a vocational expert. (*Id.* at 137-38).

On April 16, 2015, ALJ Robert T. Harvey held a second hearing, at which medical expert Dr. Donald Goldman testified. (*Id.* at 36-79). On June 11, 2015, ALJ Harvey issued an unfavorable decision. (*Id.* at 15-29). Plaintiff again requested Appeals Council review,

---

[2] Plaintiff also filed an application for supplemental security income ("SSI") benefits, but was ineligible due to excess resources. (Dkt. 6 at 140-145). The disapproval of Plaintiff's SSI claim is not before this Court.

[3] With respect to a claim for DIB, a period of disability "can only commence . . . while an applicant is fully insured." *Arnone v. Brown*, 882 F.2d 34, 38 (2d Cir. 1989) (quotation omitted). Accordingly, a DIB claimant must demonstrate that she became disabled prior to the expiration of her insured status, "regardless of the seriousness of [her] present disability." *Id.*

and her request was denied on July 1, 2015, making the ALJ's determination the Commissioner's final decision. (*Id.* at 7-11). This action followed.

## LEGAL STANDARD

I. **District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id.* §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.*

§§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on December 31, 2006, her "date last insured." (Dkt. 6 at 20). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity from March 7, 2003, the alleged onset date, through the date last insured. (*Id.*).

At step two, the ALJ found that, through the date last insured, Plaintiff suffered from the severe impairments of obesity, discogenic lumbar spine, and lumbar radiculopathy. (*Id.*). The ALJ further found that Plaintiff had the non-severe impairments of sleep apnea, hypertension, gastroesophageal reflux disorder, and depression. (*Id.* at 20-21).

At step three, the ALJ found that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity

of any Listing. (*Id.* at 21). The ALJ particularly considered the criteria of Listings 1.02 and 1.04 in reaching his conclusion, as well as considering the effect of Plaintiff's obesity as required by Social Security Ruling ("SSR") 02-1p. (*Id.* at 22-23).

Before proceeding to step four, the ALJ determined that from the alleged onset date through the date last insured, Plaintiff retained the RFC to perform "light work" as defined in 20 C.F.R. § 404.1567(b) with the additional limitations that Plaintiff:

> cannot lift more than ten pounds, can sit for two hours in an eight hour day, can stand or walk for six hours in an eight hour day, has occasional limitations in the ability to bend, climb, stoop, squat, kneel, balance, and crawl, has occasional limitations in pulling with the upper extremities, has occasional limitations in the ability to reach in all directions, cannot work in areas with unprotected heights, cannot work around heavy, moving or dangerous machinery, cannot climb ropes, ladders or scaffolds and cannot work in areas with exposure to cold or dampness.

(*Id.* at 23). At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 26).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, through the date last insured, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could have performed, including the representative occupations of usher, ticket taker, marker, and mail clerk. (*Id.* at 27-28). Accordingly, the ALJ found that, through the date last insured, Plaintiff was not disabled as defined in the Act. (*Id.* at 28).

II. **The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error**

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that: (1) the ALJ's conclusion that Plaintiff's impairments did not meet or equal a Listing was

unsupported by substantial evidence; (2) the ALJ failed to properly account for Plaintiff's morbid obesity in assessing her RFC; (3) the ALJ erred in concluding that Plaintiff did not have a severe mental impairment; and (4) the ALJ's step five conclusion that Plaintiff was capable of performing work in the national economy was unsupported by substantial evidence. The Court has considered each of these arguments and, for the reasons discussed below, finds them without merit.

A. **Step Three Analysis**

At step three of the five-step sequential analysis, the ALJ must consider whether a claimant's severe impairments meet or medically equal a Listing. The Listings "describe[] for each of the major body systems impairments that [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 416.925(a). An ALJ is not required, in every instance, to provide an express explanation for his conclusion that a claimant's impairments fail to meet or equal the requirements of a Listing. *See Ryan v. Astrue*, 5 F. Supp. 3d 493, 507 (S.D.N.Y. 2014) (citing *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982)). However, "where the evidence on the issue of whether a claimant meets or equals the listing requirements is equipoise and 'credibility determinations and inference drawing is required of the ALJ' to form his conclusion at step 3, the ALJ must explain his reasoning." *Id.* (quoting *Berry*, 675 F.2d at 469).

In this case, Plaintiff argues that the ALJ's conclusion at step three that Plaintiff's spinal impairment did not meet or equal Listing 1.04A was unsupported by substantial

evidence. The Court disagrees and finds that the ALJ fully and adequately explained his rationale at step three.

At step three, the ALJ initially noted that medical expert Dr. Donald Goldman had testified that Plaintiff's orthopedic impairments equaled Listings 1.00(B)(2)(b), 1.02, and 1.04A in combination. (Dkt. 6 at 22). The ALJ explained that he gave little weight to this opinion by Dr. Goldman because (1) it was internally inconsistent, (2) it was not consistent with the requirements of the Listings, and (3) Dr. Goldman referenced treatment that occurred several years after Plaintiff's date last insured in reaching his conclusions. (*Id.*). The ALJ further explained that Plaintiff's impairments did not meet or equal the requirements of Listings 1.02 or 1.04A because there was no evidence that Plaintiff had suffered any atrophy associated with muscle weakness or sensory or reflex loss, that Plaintiff lacked the ability to ambulate effectively or independently, or that Plaintiff was unable to sustain and complete normal activities. (*Id.*). The ALJ further noted that the reports of knee pain in the record were from 2007 and 2008, after Plaintiff's date last insured. (*Id.*).

The Court finds no error in the ALJ's step three analysis. With respect to the ALJ's consideration of Dr. Goldman's testimony, "[t]he ALJ has discretion in determining the amount of weight to give to various medical opinions and can determine to afford little weight to an opinion if it is inconsistent with the record as a whole." *Losquadro v. Astrue*, No. 11-CV-1798 JFB, 2012 WL 4342069, at *15 (E.D.N.Y. Sept. 21, 2012). In this case, as the ALJ correctly noted, Dr. Goldman's testimony was internally inconsistent. Dr. Goldman testified that Plaintiff's impairments satisfied the requirements of Listing 1.04A,

yet he also testified that there was "no evidence" of any impairment in range of motion, atrophy, deep-tendon reflex changes, weakness, or parasthesias. (*See* Dkt. 6 at 48-49). However, Listing 1.04A requires an individual to have muscle loss and sensory or reflex loss. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04A. It is an appropriate exercise of discretion for an ALJ to afford little weight to a medical opinion that is internally inconsistent. *See Hudson v. Colvin*, No. CIV.A. 5:12-44, 2013 WL 1500199, at *8 (N.D.N.Y. Mar. 21, 2013), *report and recommendation adopted sub nom. Hudson v. Comm'r of Soc. Sec.*, 2013 WL 1499956 (N.D.N.Y. Apr. 10, 2013) ("[i]nternal inconsistency clearly qualifies" as an appropriate factor to consider in determining weight to afford medical opinion). The ALJ therefore did not err in declining to adopt Dr. Goldman's opinion that Plaintiff's spinal impairment equaled the requirements of Listing 1.04A.

Moreover, the ALJ thoroughly reviewed the medical evidence of record from the relevant time period, which showed that Plaintiff's spinal impairment did not meet or equal Listing 1.04A. In relevant part, Listing 1.04A requires that a claimant demonstrate:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). . . .

*Ryan v. Astrue*, 5 F. Supp. 3d 493, 507 (S.D.N.Y. 2014) (quoting 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04A). In this case, throughout the relevant time period, Plaintiff's motor strength was consistently normal with no evidence of atrophy, as were her sensation and deep-tendon reflexes. (*See, e.g.*, Dkt. 6 at 533, 546, 549, 551, 555, 853-54, 860, 877).

Under these circumstances, the ALJ reasonably concluded that Plaintiff's back condition did not meet or equal Listing 1.04A. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."); *Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 889 (2d Cir. 2007) (noting that it was the plaintiff's "burden to demonstrate that her disability met all of the specified medical criteria of a spinal disorder" and upholding the ALJ's decision that the plaintiff's impairments did not meet or equal Listing 1.04A because there was no evidence of motor loss accompanied by sensory or reflex loss or of nerve root compression) (quotation omitted). The Court therefore finds that the ALJ's step three analysis was supported by substantial evidence.

B. <u>Consideration of Plaintiff's Obesity</u>

Plaintiff next argues that the ALJ failed to properly consider her obesity in assessing her limitations. This argument is without support in the record.

"When analyzing obesity, an ALJ should rely on [SSR] 02-1p, which explains how an ALJ should consider obesity at steps two through five of the sequential analysis." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 276 (N.D.N.Y. 2009). At step two, the ALJ must consider whether a claimant's obesity is a severe impairment. *Id.* If it is, the ALJ must consider the impacts of the obesity throughout the remainder of the analysis, keeping in mind that "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity." *Macaulay v. Astrue*, 262 F.R.D. 381, 388 (D. Vt. 2009) (quoting SSR 02-1p) (alteration in original). However, a failure to explicitly discuss

a claimant's obesity is not reversible error "when the record provides no evidence the claimant is limited in basic work activities" by it. *Rockwood*, 614 F. Supp. 2d at 276.

During the time period relevant to her DIB claim, Plaintiff was 5'4" tall and weighed between 310 and 330 pounds, which Dr. Goldman testified was considered "morbidly obese." (Dkt. 6 at 57). Plaintiff testified that, during the relevant time period, her weight affected her ability to balance while walking and caused her to fall. (*Id.* at 68). Plaintiff also testified at the July 24, 2013, hearing that her weight caused her difficulty in using stairs, fitting into small places, sitting in chairs comfortably, walking, and engaging in "general activity." (*Id.* at 85-86). With respect to whether Plaintiff's obesity was "a significant factor" in her impairments, Dr. Goldman testified that there were no specific findings to support that conclusion and that her claims in that regard were "subjective . . . [and] can't be verified." (*Id.* at 57-58).

In his decision, the ALJ expressly considered Plaintiff's obesity throughout the analysis. At step two, the ALJ found that Plaintiff's obesity was a severe impairment. (*Id.* at 20). At step three, the ALJ "considered the effects of [Plaintiff's] obesity on [the considered] impairments as required by Social Security Ruling 02-1p" (*id.* at 22), but ultimately concluded, for the reasons set forth above, that Plaintiff's impairments did not meet or equal a Listing (*id.* at 22-23). Then, in formulating his RFC assessment, the ALJ discussed and considered the medical evidence of record regarding Plaintiff's weight and

its impact on her functioning, as well as Plaintiff's testimony regarding the impacts of her obesity. (*Id.* at 24-26).

Based on the foregoing, the Court finds the ALJ complied with the requirements of SSR 02-1p and appropriately considered the impacts of Plaintiff's obesity throughout his decision. The ALJ's RFC finding incorporated limitations directly related to the difficulties Plaintiff described as a result of her weight, including limitations in sitting, walking, standing, balancing, and climbing. (*Id.* at 23). Moreover, because Plaintiff "points to nothing in the record demonstrating that her obesity caused limitations in excess of those provided in the RFC, she has not met her burden of proof with respect to obesity-related limitations, nor established that any purported error in evaluating obesity harmed her in any way." *Hill v. Berryhill*, No. 1:17-CV-02090 (SDA), 2018 WL 4462362, at *13 (S.D.N.Y. Sept. 18, 2018). The Court therefore finds no error or basis for remand in the ALJ's consideration of Plaintiff's obesity.

### C. <u>Consideration of Mental Impairments</u>

Plaintiff also contends that the ALJ erred in determining at step two that she did not have a severe mental impairment during the relevant time period. She argues that she has a "long-standing history of depression and/or bipolar disorder" and that the ALJ failed to properly consider the "Paragraph B" criteria in assessing the severity of her mental impairments. (Dkt. 7-1 at 6-8). The Court finds this argument without merit, for the reasons that follow.

In assessing the severity of mental impairments, the Commissioner's regulations require the ALJ to apply "a 'special technique' at the second and third steps of the five-

step framework." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). As the Second Circuit has explained:

> This technique requires the reviewing authority to determine first whether the claimant has a medically determinable mental impairment. If the claimant is found to have such an impairment, the reviewing authority must rate the degree of functional limitation resulting from the impairment(s) in ... four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.[4] According to the regulations, if the degree of limitation in each of the first three areas is rated mild or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not severe and will deny benefits. If the claimant's mental impairment is severe, the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder. If so, the claimant will be found to be disabled. If not, the reviewing authority will then assess the claimant's residual functional capacity.

*Id.* (quotations and citations omitted).

The ALJ in this case applied the special technique in considering Plaintiff's mental impairments. The ALJ first found that Plaintiff had the medically determinable mental impairment of depression during the relevant time period. (Dkt. 6 at 21). The ALJ then considered each of the four functional areas and determined that: (1) Plaintiff had only mild limitations in her activities of daily living; (2) Plaintiff had only mild limitations in social functioning; (3) Plaintiff had no limitations in concentration, persistence, or pace; and (4) Plaintiff had experienced no episodes of decompensation of extended duration. (*Id.*).

---

[4] These four functional areas are identified in paragraphs B and C of the adult mental disorders listings and are often referred to as the "Paragraph B criteria." *See Carvey v. Astrue*, No. 06-CV-0737 (NAM/DEP), 2009 WL 3199215, at *3 (N.D.N.Y. Sept. 30, 2009), *aff'd*, 380 F. App'x 50 (2d Cir. 2010).

Accordingly, the ALJ concluded that Plaintiff's mental impairments were non-severe. (*Id.* at 21-22).

Plaintiff has failed to demonstrate any error in the ALJ's application of the special technique so as to warrant remand. Plaintiff argues the ALJ did not "give proper weight" to the first functional area (activities of daily living). (*See* Dkt. 7-1 at 8-10). To the contrary, the ALJ's conclusion that Plaintiff had only mild limitations in this regard was well-supported by the evidence of record. As the ALJ noted, Plaintiff received significant psychiatric treatment in October 2000, several years before her alleged onset date. (*See* Dkt. 6 at 15). However, during the relevant time period, Plaintiff sought no treatment from a mental health professional and made only occasional complaints of depression to her primary care physician while consistently showing normal mood and affect. (*See id.* at 533, 541, 546, 855, 857). On the one occasion where her depression temporarily worsened, Plaintiff's doctor increased her antidepressant dosage, and she quickly improved. (*See id.* at 543, 540-41). Plaintiff testified that her medication was effective in treating her depression. (*See id.* at 93).

As the ALJ further noted, Plaintiff testified that during the relevant time period, she was able to do some cooking and cleaning, engage in scrapbooking, shop, go to church, visit friends, and drive. (*Id.* at 96-97). Courts have found these types of activities consistent with an ALJ's assessment of only mild difficulties in activities of daily living. *See, e.g., Correa v. Comm'r Soc. Sec. Admin.*, No. 3:16-CV-01234 (VLB), 2017 WL 4457442, at *5 (D. Conn. Oct. 6, 2017); *Lewis v. Colvin*, 122 F. Supp. 3d 1, 6 (N.D.N.Y. 2015); *see also Wood v. Colvin*, 987 F. Supp. 2d 180, 191 (N.D.N.Y. 2013) (affirming

ALJ's finding of mild limitations in activities of daily living where "[t]he record demonstrate[d] that [the plaintiff's] activities of daily living were significantly limited by his physical impairments, but [the plaintiff] never alleged that his depression interfered with specific daily activities").

The ALJ also appropriately found that certain of Plaintiff's statements regarding her limitations were not fully credible. (*See* Dkt. 6 at 21). An ALJ's credibility assessment is "entitled to great deference" and can be reversed only if it is "patently unreasonable." *Perez v. Barnhart*, 440 F. Supp. 2d 229, 235 (W.D.N.Y. 2006) (quotations omitted). In this case, the ALJ explained that he found Plaintiff less than fully credible because her testimony was internally inconsistent—for example, Plaintiff testified that she was unable to bend her back but also testified that she would climb the stairs bent over on her hands and knees. (*See* Dkt. 6 at 21). "[O]ne strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the case record," *Mercado v. Astrue*, No. CIV. 3:09-CV-1576, 2010 WL 9478984, at *4 (D. Conn. July 26, 2010) (quotation omitted), and the Court therefore finds the ALJ's negative assessment of Plaintiff's credibility reasonable.

Plaintiff bore the burden of demonstrating that she had a severe mental impairment. *See Cox v. Astrue*, 993 F. Supp. 2d 169, 178 (N.D.N.Y. 2012) ("The claimant bears the burden of presenting evidence establishing severity."). Here, based on the limited evidence available regarding Plaintiff's mental health during the relevant time period, the ALJ reasonably concluded that Plaintiff had only mild limitations in her activities of daily

living. The Court therefore finds no error in the ALJ's conclusion that Plaintiff did not have a severe mental impairment.

D. **Step Five Analysis**

Plaintiff's final argument is that the ALJ's step five analysis was unsupported by substantial evidence, because the ALJ discounted the testimony of Donald Shader, a VE who testified at the July 24, 2013, hearing and because the hypothetical questions posed by the ALJ to VE Josiah Pearson at the April 16, 2015, hearing did not include all of the limitations claimed by Plaintiff. (Dkt. 701 at 10-11). This argument lacks merit.

With respect to VE Shader's testimony, as Defendant points out, the ALJ's decision arising from the July 24, 2013, hearing was vacated by the Appeals Council, in part because of deficiencies in consideration of the VE's testimony. The ALJ then held a second hearing, at which VE Pearson testified, and issued the *de novo* decision in question in this case. VE Shader's testimony simply played no role in the determination that is currently before the Court. Plaintiff has not provided any rationale for why a purported error in considering VE Shader's testimony—which was remedied by the Appeals Council's vacatur of the ALJ's initial decision—would warrant remand at this stage of the proceedings.

With respect to the hypothetical questions posed to VE Pearson, at step five of the sequential analysis, "[t]he Commissioner may rely on a vocational expert's testimony concerning the availability of jobs suited to a hypothetical person's capabilities so long as the hypothetical is based on substantial evidence." *Mancuso v. Astrue*, 361 F. App'x 176, 179 (2d Cir. 2010). However, "[i]f a hypothetical question does not include all of a

claimant's impairments, limitations and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." *Melendez v. Astrue*, 630 F. Supp. 2d 308, 319 (S.D.N.Y. 2009) (quotation omitted). Accordingly, in assessing the adequacy of the hypothetical questions posed to a VE, the Court will find error "where there was no evidence to support the assumption underlying the hypothetical." *Santos v. Astrue*, 709 F. Supp. 2d 207, 211 (S.D.N.Y. 2010) (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983)).

The Court finds no error in the hypotheticals posed to VE Pearson, which were consistent with the RFC assessment and supported by substantial evidence. In particular, the ALJ appropriately determined that Plaintiff was capable of performing a limited range of light work. As the ALJ explained, imaging studies of Plaintiff's spine during the relevant time period showed only mild to moderate degenerative changes that were inconsistent with the disabling limitations claimed by Plaintiff. (*See* Dkt. 6 at 24-25 (referring to *id.* at 419, 745, 969, 1050)). Moreover, and as discussed above, Plaintiff's motor strength, sensation, and deep-tendon reflexes were consistently normal throughout the relevant time period. (*See, e.g., id.* at 533, 546, 549, 551, 555, 853-54, 860, 877). Plaintiff received only conservative treatment, to which she responded well. For example, Plaintiff reported to her physicians in December 2005 that physical therapy was "working wonders," that she had noted a 75% improvement in her symptoms, and that she continued to improve. (*Id.* at 417). Her treating neurosurgeon stated that Plaintiff's "symptoms [had] improved with conservative treatment" and recommended "continued exercise and therapy." (*Id.* at 418). The ALJ also considered Plaintiff's statements regarding her pain

and limitations, which he found partially credible. (*See id.* at 26). Taking into account all of this information, the ALJ concluded that Plaintiff was capable of a limited range of light work, explaining that this conclusion was supported by "the objective medical evidence showing only mild degenerative changes, [Plaintiff's] treatment history showing that with conservative treatment of physical therapy her back pain improved significantly, [Plaintiff's] admitted daily activities of daily living during the period and the lack of significant opinion evidence supporting disability." (*Id.*).

It is the function of an ALJ to "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). In this case, the ALJ's conclusion that Plaintiff was capable of a limited range of light work was fully supported by the medical evidence described above, which showed only relatively minor physical impairments during the relevant time period. *See Lay v. Colvin*, No. 14-CV-981S, 2016 WL 3355436, at *7 (W.D.N.Y. June 17, 2016) (in assessing plaintiff with a discogenic lumbar spine who had relatively minor physical impairments, the ALJ was permitted to review the imaging results, "along with the other medical evidence of record, and to conclude that there is nothing in the record to support the severity of the symptoms testified to by the claimant") (quotation omitted).

Having appropriately found that Plaintiff was capable of a limited range of light work, the ALJ did not err in presenting hypotheticals consistent with that assessment to the VE. *See Priel v. Astrue*, 453 F. App'x 84, 87–88 (2d Cir. 2011) (holding that "the ALJ properly declined to include in his hypothetical question symptoms and limitations that he

had reasonably rejected"). Accordingly, the Court finds that remand to the Commissioner is not warranted on this basis.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 12) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 7) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: September 26, 2018
      Rochester, New York